1

Volume I, Pages 1-67
Exhibits 1-15
IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
C.A. No. 03-CV-01793-EWN-BNB

PATRICIA EMERSON, *
Plaintiff *
vs. *
WEMBLEY USA INC., WEMBLEY INC.; *
ROBERT TY HOWARD in his personal capacity; *
and JEFFREY GOERGEN in his personal *
capacity, *
Defendants *

VIDEO DEPOSITION OF: DANIEL BUCCI
CAMPBELL CAMPBELL EDWARDS & CONROY
123 Dyer Street
Providence, Rhode Island
November 16, 2005 10:05

----REPORTED BY: CHRISTINE SILVA-ADERMANN/RPR----
CJ REPORTING
A5 Colonial Drive, Unit #7
Andover, Massachusetts 01810
978.409.9090 Fax 978.409.9091

2

APPEARANCES:

Representing the Plaintiff:
ZUPKUS & ANGELL, P.C.
BY: ROBERT A. ZUPKUS, ESQ.
MELISSA A. CLACK, ESQ.
555 East Eighth Avenue
Denver, Colorado 80203
303.894.8948 Fax 303.894.0104

Representing Wembley Inc., Wembley USA, Inc., and Robert Ty Howard:
SNELL & WILMER, L.L.P.
BY: KRISTEN L. MIX, ESQ.
1200 Seventeenth Street
Suite 1900
Denver, Colorado 80202
303.634.2000 Fax 303.634.2020

Representing the Deponent:
ANTHONY M. TRAINI, ESQ.
BY: ANTHONY M. TRAINI, ESQ.
55 Pine Street
Providence, Rhode Island 02903
401.621.4700 Fax 401.621.5888

Also Present: William Barton, Videographer
Charles Mone, Esq.

3

INDEX


| WITNESS: | EXAMINATION BY: | PAGE: |
|---|---|---|
| Daniel Bucci | Mr. Zupkus | 6, 65 |
| | Ms. Mix | 59 |

| EXHIBITS: | PAGE: |
|---|---|
| Exhibit 1, Organizational Chart | 14 |
| Exhibit 2, First Page of Tax Return | 16 |
| Exhibit 3, Document | 20 |
| Exhibit 4, Document | 38 |
| Exhibit 5, Document | 41 |
| Exhibit 6, Spreadsheet | 44 |
| Exhibit 7, Document | 46 |
| Exhibit 8, Memorandum | 48 |
| Exhibit 9, Document of Corporate Structure | 48 |
| Exhibit 10, Job Requirements | 49 |
| Exhibit 11, Document | 50 |
| Exhibit 12, E-Mail | 50 |
| Exhibit 13, Termination Agreement Letter | 51 |
| Exhibit 14, Document | 53 |
| Exhibit 15, Indemnity Agreement | 57 |


4

THE VIDEOGRAPHER: We are now on the record. The date is November 16, 2005. The time is approximately 10:05 a.m. We are located at 123 Dyer Street in Providence, Rhode Island. The defendant in the case of Patricia Emerson versus Wembley USA, Incorporated will take the audio-visual deposition of Mr. Daniel Bucci.

My name is William Barton of In Court Technologies in Boston, Mass., and I am the videographer at this deposition. The stenographer is Christine Adermann of CJ Reporting. At this time the attorneys will introduce themselves for the record.

MR. ZUPKUS: This is Bob Zupkus on behalf of the plaintiff, Pat Emerson. And I would like to make a friendly correction and amendment to the record, and that is today's deposition is actually taken by the plaintiff. I believe you stated taken by the defendant. And with me is my colleague Melissa Clack and also the plaintiff, Pat Emerson.

MS. MIX: This is Kristen Mix. And I'm the attorney for the defendant, Wembley USA, Wembley Inc., and Robert Ty Howard.

EXHIBIT
A-17

57

approximately 11:06 a.m. We are off the record.
(Marked, Exhibit 15, Indemnity Agreement)
THE VIDEOGRAPHER: We are on the record. The time is approximately 11:12 a.m.
Q. Mr. Bucci, let me show you what's been marked as Exhibit 15. Do you understand this to be an indemnity agreement issued by Wembley companies in favor of Ms. Emerson?
MS. MIX: Continuing objection and lack of foundation.
A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.
Q. Do you know why this document was signed on behalf of Wembley by Mr. Elliot?
MS. MIX: Objection. Lack of foundation.
A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States

58

Constitution.
Q. If you are required as part of your sentence in the conviction in the case USA versus Nigel Potter and others, if you are required to actually pay any fine, do you have any agreement with any Wembley entity to pay that fine on your behalf?
MS. MIX: Objection. Lack of foundation.
MR. TRAINI: Well, I don't want to do something with respect to that question, Mr. Zupkus, that's going to implicate the privilege. If what you really want to know is that information, whether or not Wembley is paying fines in the criminal case, I can tell you that. And the answer is no, they are not.
MR. ZUPKUS: All right.
Q. Mr. Bucci, do you have any agreement with any of the Wembley entities to pay any of your personal expenses or family expenses if in fact you are incarcerated?
MS. MIX: Objection. Lack of foundation.
MR. TRAINI: And based on the same

59

statement that I just made without getting into areas that would implicate the privilege, I can answer that question and the answer again is no.
Q. Mr. Bucci, if I ask you any further questions involving Ms. Emerson and her employment with Wembley USA Inc. or Wembley Inc., would you continue to invoke your Fifth Amendment and other Constitutional rights as you've done so up to this point?
A. Yes.
Q. And would the same be true if I asked you any questions concerning your involvement as an employee of Wembley Inc., Wembley USA Inc., or Lincoln Park?
A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.
MR. ZUPKUS: Thank you. I have no further questions.
EXAMINATION
BY MS. MIX:
Q. Good morning, Mr. Bucci. My name is

60

Kristen Mix, and I represent the defendants, Wembley Inc., Wembley USA, and Robert Ty Howard in this litigation.
A. Good morning.
Q. You and I have not met or spoken to each other before today; is that correct?
A. That's correct.
Q. Mr. Bucci, where are you presently employed?
A. I'm not employed.
Q. What is the date, last date that you were employed?
A. I'm not sure what it was.
Q. Can you give me a rough guess, a month and year?
A. February of '05.
Q. February 2005?
A. Yes.
Q. And you are not a defendant in this litigation; is that correct?
A. I am not.
Q. Do you have any interest in the outcome of this litigation?
MR. ZUPKUS: Form. Foundation.

61

A. I do not.
Q. Have you consulted with anyone other than your attorney about the subject of this litigation?
MR. TRAINI: Excuse me for one minute. I think that question is going to implicate his attorney/client privilege, and so I'm going to direct him not to answer it.
Q. Have you consulted with anyone other than your attorney about your deposition today?
MR. TRAINI: Same response to that one, Ms. Mix.
Q. Have you consulted with anyone other than your attorney about your answers to questions today?
MR. TRAINI: Same response to that, Ms. Mix.
Q. Mr. Bucci, if I could ask you to look again at Exhibit 14.
MR. TRAINI: Which piece of it, Ms. Mix, do you want him to look at?
Q. My first question goes to both pieces. Can you tell me whether the second piece of Exhibit 14 which consists of three pages was originally a part of the first piece of Exhibit 14 which consists of four pages? Oh, excuse me, five pages?

62

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.
Q. Could you please look at page 3 of the first part of Exhibit 14. Could you please read the lines beginning four lines down where it says "re Pat" --
MR. TRAINI: Ms. Mix --
Q. -- through to the conclusion of that first part of Exhibit 14. That's my question.
MR. TRAINI: Ms. Mix, is it correct that you are asking Mr. Bucci to simply read what's on that piece of paper and those lines without asking him to identify the document or indicate whether or not he's the author?
MS. MIX: Indeed I am.
A. I understand where you said to be begin, but I don't remember where you asked to end.
Q. Through the end of that first section of Exhibit 14.
A. "Regard Pat, my feeling would be to let her gently know that we have several candidate left and

63

that she did not make the final cut. I don't know if she should be told that her value to the company is greater in Denver or that simply more qualified folks than she is comprised the final two or three. I think she manifested too many Denver-esque traits including that never endearing ability of overestimating her own worth. That seemed to permeate the mile-high air. I think she spent too much time listening, believing that we-are-sharper-than-they-are mantra explaining from -- emanating, excuse me, from the offices of her boss."
Q. Mr. Bucci, to the best of your knowledge, did Pat Emerson refuse to accept the position of chief financial officer of the Wembley operations of Rhode Island?
A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.
Q. And it's true that she refused to accept the offer of that position in Rhode Island because of her unwillingness to move from Colorado; isn't

64

that correct?
A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.
MS. MIX: I don't have any further questions, Mr. Bucci. Thank you. I do have one more matter for the record though. Can we agree, Mr. Zupkus, that you will provide me with Bates stamped versions of all the Exhibits which have been used in the deposition today?
MR. ZUPKUS: We will do all we can to identify when those documents were produced during the course of the discovery. Some probably do have Bates stamps. Others, as we said, were part of collective exhibits which they singly Bates stamped, and those will be identified.
MS. MIX: Okay. That will be great. Thank you.
MR. ZUPKUS: I do have a couple of questions, Mr. Bucci, based on the questions that Ms. Mix asked you.
FURTHER EXAMINATION

BY MR. ZUPKUS:

Q. Who is your last employer in February 2005?

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. You were asked to read a particular document, which you did at the request of Ms. Mix. In that document there were the words "other qualified candidates." And I believe that's the position of Lincoln Park. And my question is could you identify those other qualified candidates for us?

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

MR. ZUPKUS: I have no further questions, sir. Thank you.

MS. MIX: Thank you, sir.

THE VIDEOGRAPHER: This completes the audio-visual deposition of Daniel Bucci. There was



one videotape used in this deposition. The time is approximately 11:21 a.m. We are off the record.

(Deposition concluded at 11:21 a.m.)



I, CHRISTINE SILVA-ADERMANN, Commissioner of the State of Rhode Island and Providence Plantations, do hereby certify that DANIEL BUCCI came before me on the 16th day of November, 2005, at the law offices of CAMPBELL CAMPBELL EDWARDS & CONROY, Providence, Rhode Island and was by me duly sworn to testify to the truth and nothing but the truth as to his knowledge touching and concerning the matters in controversy in this cause; that he was thereupon examined upon his oath and said examination reduced to writing by me; and that the statement is a true record of the testimony given by the witness, to the best of my knowledge and ability.

I further certify that I am not a relative or employee of counsel/attorney for any of the parties, nor a relative or employee of such parties, nor am I financially interested in the outcome of the action.

WITNESS MY HAND this 6th day of December, 2005.

Christine Silva-Adermann My Commission Expires:
Commissioner of Deeds October 11, 2009