Volume I, Pages 1-67

Exhibits 1-15

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF COLORADO

C.A. No. 03-CV-01793-EWN-BNB

PATRICIA EMERSON, *

Plaintiff *

vs. *

WEMBLEY USA INC., WEMBLEY INC.; *

ROBERT TY HOWARD in his personal capacity; *

and JEFFREY GOERGEN in his personal *

capacity, *

Defendants *

VIDEO DEPOSITION OF: DANIEL BUCCI

CAMPBELL CAMPBELL EDWARDS & CONROY

123 Dyer Street

Providence, Rhode Island

November 16, 2005 10:05

-----REPORTED BY: CHRISTINE SILVA-ADERMANN/RPR-----

CJ REPORTING

A5 Colonial Drive, Unit #7

Andover, Massachusetts 01810

978.409.9090 Fax 978.409.9091

EXHIBIT B-34

question. Thank you, Mr. Traini.

Q. Mr. Bucci, I understand you were a defendant in a case known as U.S. versus Nigel Potter, et al; is that correct?

A. Yes.

Q. And that case went to trial; is that correct?

A. Yes.

Q. And you were convicted of certain charges in that case; is that correct?

A. Yes.

Q. Would you please tell me what the charges were for which you were convicted?

A. I don't know the specifics.

MR. ZUPKUS: Now I will ask Mr. Traini for an explanation.

MR. TRAINI: Mr. Bucci was convicted of conspiracy to commit wire fraud, and I can't remember how many substantive counts of wire fraud, in the U.S. District Court for the District of Rhode Island. And that conviction is a matter of record in that court.

MR. ZUPKUS: Thank you, sir.

Q. Mr. Bucci, have you filed an appeal of your

Bucci was convicted of except that the substantive wire fraud counts were different counts of the same indictment.

Q. To your knowledge, was Mr. Potter, was a sentence imposed to Mr. Potter related to those charges?

A. Yes.

Q. And do you know what those terms were?

A. I believe they were 37 months and the same cash fine, 75,000.

MR. TRAINI: Actually, it's 36 months for Mr. Potter's sentence, and the fines were $75,000 as to each of them.

MR. ZUPKUS: Thank you.

Q. Do you know if Mr. Potter has commenced an appeal?

A. Yes, he has.

Q. Mr. Bucci, did you work for Wembley USA Inc. at the same time as Pat Emerson did?

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

Q. Mr. Bucci, did you work for Wembley Inc. at the same time as Pat Emerson?

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

Q. And Mr. Bucci, at the time you worked for Wembley Inc. US -- excuse me, at the time you worked for Wembley USA Inc. or Wembley Inc., did Mr. Nigel Potter also work for those companies?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

Q. While you worked for Wembley Inc. and Wembley USA Inc., did you report to Nigel Potter?

MS. MIX: Same objection.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and

Fourteenth Amendments of the United States Constitution.

Q. While you worked for Wembley USA Inc. and Wembley Inc., did you also -- did Robert Ty Howard to your knowledge also report to Nigel Potter?

MS. MIX: Objection.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

Q. At any time did you work for Burreville Racing Association also known as Lincoln Park?

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. And at the time you worked for Burreville Racing Association also known as Lincoln Park did you report to Nigel Potter?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I

respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. During the time you were associated with any of the Wembley companies, Wembley Inc., or any of its subsidiaries, did you become familiar with how the money room at Lincoln Park operated?

MS. MIX: Lack of foundation. Objection.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. During the time you worked for Wembley Inc. or any of its subsidiary, did you become familiar with the accounting practices at Lincoln Park?

MS. MIX: Same objection for the record.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Mr. Bucci, are you familiar with the dates of Ms. Emerson's employment with Wembley USA, Inc. or Wembley Inc.?

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Mr. Bucci, are you familiar with the duties that Ms. Emerson held during her employment with Wembley USA, Inc. and Wembley Inc.?

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Is it your understanding that Ms. Emerson was the only female officer of Wembley USA Inc.?

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my

rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Is it your understanding that Ms. Emerson was the only female officer of Wembley Inc.?

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution..

Q. Is your understanding, for example, that Ms. Emerson performed tax services for Wembley Inc. including preparing tax returns that were filed with the federal government?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

(Marked, Exhibit 2, First Page of Tax Return).

Q. Mr. Bucci, let me show you what's been

marked as Exhibit 2. And let me ask you if you recognize this as the first page of the tax return filed on behalf of Wembley Inc. which is signed by Pat Emerson as acting CFO of Wembley Inc. and dated May 31, 2001?

MS. MIX: I'm going to object. Lack of foundation. I also object that this document is not Bates stamped, and there's no indication that it's even been produced in this litigation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Did you understand that Ms. Emerson had authority to approve all contracts and approve all purchases for Wembley Inc. and Wembley USA Inc. prior to 2002?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States

Constitution.

Q. Mr. Bucci, did you understand that during Ms. Emerson's emplpyment with Wembley USA Inc. and Wembley Inc. she also performed financial functions on behalf of Lincoln Park?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Did you understand that Ms. Emerson on behalf of Lincoln Park performed review and approval of all money room controls, policies, and procedures?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. And did you understand that Ms. Emerson

performed review of the monthly financial statements on behalf of Lincoln Park?

MS. MIX: Same objection.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Did you understand that Ms. Emerson performed design and setup of automatic simulcast settlement programs on behalf of Lincoln Park?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Did you understand that Ms. Emerson on behalf of Lincoln Park performed business plans and budget preparations?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I

respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Did you understand that Ms. Emerson on behalf of Lincoln Park performed the supervision of all onsite accounting functions?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

(Marked, Exhibit 3, Document)

Q. Mr. Bucci, let me show you what's been marked as Exhibit 3, and let me ask that you read the last full paragraph into the record.

MS. MIX: Objection. This document again is not Bates stamped. There is no evidence that it's been produced in this litigation.

MR. TRAINI: Mr. Zupkus, I take it that you are not asking Mr. Bucci to identify this document and you are not asking him if he's seen it;

you just want him to read the last paragraph of this document into the record.

MR. ZUPKUS: That's correct.

A. "Pat Emerson will assume full responsibility for the financial affairs of Wembley USA in the interim period."

Q. Did you become aware in April approximately, April 18, 2001, that Pat Emerson assumed full responsibility for full financial affairs of Wembley USA?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Have you ever seen a copy of Exhibit 3 before?

A. I'm sorry, I didn't hear the question.

Q. Have you ever seen Exhibit 3 before?

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and

Fourteenth Amendments to the United States Constitution.

Q. Did you consider Ms. Emerson as of April 18, 2001 to be within the cadre or core of upper management of Wembley USA?

A. On the advice of my attorney --

MS. MIX: Objection. Lack of foundation. You can answer the question.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Did you understand that as of April 18, 2001 Pat Emerson was part of upper management of Wembley Inc.?

MS. MIX: Same objection.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Were you aware of Ms. Wembley's benefit and compensation package as of April 18, 2001?

MS. MIX: I think you want to reask the question. You said Ms. Wembley.

Q. I'm sorry. Thank you. As of April 18, 2001, were you aware of Ms. Emerson's salary and benefit package with Wembley USA?

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Were you aware of her compensation and benefit package as of April 18, 2001 with Wembley Inc.?

MS. MIX: Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Are you aware that as of April 18, 2001 and thereafter that Ms. Emerson's salary and benefits were not commensurate with comparable responsibility levels of other upper management members of Wembley USA Inc. and Wembley Inc.?

MS. MIX: Objection. Lack of foundation. Assumes facts not in evidence.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. On October 2000 -- in October 2001 it's true, isn't it, that Wembley, the defendant Wembley, hired Jeffrey Goergen as CFO; isn't that correct?

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. And isn't it a fact that as of October 2001 Mr. Goergen's background, qualifications, and experience was less than that of Ms. Emerson?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States

Constitution.

Q. Was the only reason Mr. Goergen was hired the fact that he was a male?

MS. MIX: Objection. Lack of foundation. Go ahead.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Are you aware of whether at any time Ms. Emerson performed tax planning, budget planning, business planning on behalf of Wembley Inc.?

MS. MIX: Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Are you aware that shortly after Ms. Emerson filed her EEOC complaint in October 2001 her check writing authority was reduced?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Are you aware that after October 2001 Wembley USA Inc. and Wembley Inc. for the first time began to criticize Ms. Emerson's job performance?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Are you aware before October 2001 that Ms. Emerson attended board meetings of Wembley USA Inc. and/or Wembley Inc.?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States

Constitution.

Q. Are you aware that only after Ms. Emerson filed her EEOC complaint that Wembley USA Inc. and Wembley Inc. excluded her from all further board meetings?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Are you aware that only after Ms. Emerson had filed her EEOC complaint that Wembley USA Inc. and Wembley Inc. removed her authority to approve all contracts and to approve purchases?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Are you aware that Ms. Emerson was called

worked for the Wembley companies?

MS. MIX: Objection.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Are you aware that only after Ms. Emerson testified at grand jury that Wembley USA Inc. and Wembley Inc. accused her of fraud?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Are you aware that after Ms. Emerson testified at the grand jury proceeding she was threatened with termination?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my

rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Is it not true that Ms. Emerson at least at one point refused to make payments to McKinnon and Harwood and that these payments were what ultimately led to your indictment and conviction?

A. On the advice of my --

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Isn't it true that -- stop, strike that question.

If we can go off the record for a just bit, I want to organize some of the documents. Thank you. Appreciate that.

THE VIDEOGRAPHER: The time is approximately 10:30 a.m. We are off the record.

(Off the record)

THE VIDEOGRAPHER: We are on the record.

The time is approximately 10:37 a.m.

MR. ZUPKUS: Back on the record.

Q. Mr. Bucci, isn't it true that you wanted the defendants Wembley to terminate Ms. Emerson when you realized that she knew of the McKinnon and Harwood payments?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Did you ever discuss with Robert Ty Howard how to make Ms. Emerson's work environment so hostile that she would have no other choice but to leave employment with Wembley USA Inc. and Wembley Inc.?

MS. MIX: Objection. Foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Mr. Bucci, are you aware that the Wembley USA Inc. and Wembley Inc. registered agents in Colorado and Delaware are the same?

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Are you aware that all of Wembley Inc.'s officers and directors are the same as Wembley USA Inc.'s officers and directors?

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Are you aware and would you agree that the assets and responsibilities once held by Wembley USA Inc. are now divided between Wembley Inc. and Wembley USA Inc.?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my

rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Is it your understanding that after Ms. Emerson's employment with the defendants Wembleys ceased, the Wembley companies were reorganized?

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Would you agree that after the reorganization that, Wembley Inc. now most closely resembled the entities for whom Ms. Emerson performed work during her employment?

MS. MIX: Objection.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Would you agree that Lincoln Park is now owned by Wembley Inc.?

A. On the advice of my attorney, I

respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Are you aware that as of December 2000 Ms. Emerson applied for the financial director position at the Lincoln Park office?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Would you agree that as of the date of her application Ms. Emerson possessed the qualifications that Lincoln Park was looking for in a financial director position?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Did Ms. Emerson ever communicate to you that she was experiencing physical illness and emotional distress based upon the way she was being treated in her employment?

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Are you aware that because of the Wembleys' treatment toward her, Ms. Emerson's physically and emotional health worsened to such a degree she took a medical leave of absence from the company?

MS. MIX: Objection. Lack of foundation. Assumes facts not in evidence.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States

Constitution.

Q. Did you have any role in reducing Ms. Emerson's status as a type A check signer after April 27, 2001?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Did any other controllers within the Wembley organization or Wembley companies have type A signature authority?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Do you know who made the decision to reduce Ms. Emerson's check writing authority after April 27, 2001?

MR. ZUPKUS: Would you repeat the question to the witness, Ms. Reporter.

(*Question read)

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Mr. Bucci, it indicates that certain checks written by you and cashed in the money room in April and May 2001 -- excuse me, not written in April and May 2001 but were written in dates in March 2001. What were those sums used for?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. At any time did you cash up to $21,000 worth of checks through the money room at Lincoln Park?

MS. MIX: Same objection.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

(Marked, Exhibit 8, Memorandum)

Q. Show you what I believe has been marked as Exhibit 8. Mr. Bucci, did you send this memo to Ms. Emerson telling her that any requests for corporate information must come through you in writing?

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

(Marked, Exhibit 9, Document of Corporate Structure)

Q. Let me show you Exhibit 9. Do you recognize this as a document of Wembley USA Inc. and Wembley Inc. reflecting a corporate structure and Ms. Emerson as the CFO?

MS. MIX: Continuing objection.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my

rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

(Marked, Exhibit 10, Job Requirements)

Q. Show you what's been marked as Exhibit 10. Mr. Bucci, did you help prepare these job requirements for the financial director position at Lincoln Park?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Isn't it true that Ms. Emerson possessed all the requirements that were listed on the second page of that exhibit?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States

(Marked, Exhibit 14, Document)

Q. Let's me show you what's been marked as Exhibit 14. Under the portion where it says "message," would you read the first two lines of the handwriting there into the record?

MS. MIX: Continuing objection and objection. Lack of foundation.

MR. TRAINI: And, Mr. Zupkus, you are not asking Mr. Bucci to identify the document or indicate whether or not he's seen it before or whether or not he authored it; you simply want him to read what's on that portion of the paper; is that correct?

MR. ZUPKUS: That's correct.

A. I didn't know how much I was supposed --

Q. Read the first two lines in the handwritten beginning Pat Emerson.

A. "Pat Emerson called being a little nosey. Her read these."

Q. Now, my question is, Mr. Bucci, is that in your handwriting?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I

respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Is it your handwriting that's contained on all of the pages of Exhibit 14?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Turn to the third page of that exhibit. And would you read into the record the first three handwritten lines beginning "concerning"?

MR. TRAINI: Again, Mr. Zupkus, you are simply asking Mr. Bucci to read what's on that piece of paper on those three lines without asking him to identify the document or to indicate whether or not he's the author; is that right?

MR. ZUPKUS: You're correct, sir.

A. "Concerning your 7 May e-mail including Pat Emerson, my computer needs some medical attention."

Q. And is the line -- are the lines you just read in your handwriting?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. Now, please turn to the page that has handwriting that says "the only other time" so that we're all on the same page.

A. Oh.

Q. This is the first page of -- rather the second section of Exhibit 14. Would you read into the record the paragraph that begins "I just don't know"?

MR. TRAINI: Again, Mr. Zupkus, is it correct that you are asking Mr. Bucci to simply read what is on that piece of paper without asking him to identify the document or whether or not he's the author?

MR. ZUPKUS: Correct.

A. "I just don't know what role professional

rat that this person is going to have that isn't being done flawlessly."

Q. Is the author of this document, Mr. Bucci, talking about Pat Emerson?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Q. To your knowledge, did any of the Wembley defendants ever pay Ms. Emerson one year's full salary after she left her employment with Wembley?

MS. MIX: Objection. Lack of foundation.

A. On the advice of my attorney, I respectfully decline to answer in reliance upon my rights and privileges under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

MR. ZUPKUS: Let's take a short break, and I think we can wrap things up.

THE VIDEOGRAPHER: The time is