**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Edward W. Nottingham**

Civil Action No. 03-CV-01793-EWB-BNB

PATRICIA EMERSON,

Plaintiff,

v.

WEMBLEY USA INC.;
WEMBLEY INC.;
ROBERT TY HOWARD in his personal capacity; and
JEFFREY GOERGEN in his personal capacity,

Defendants.

---

**PLAINTIFF'S RESPONSE TO WEMBLY INC.'S SECOND RENEWED MOTION FOR SUMMARY JUDGMENT AND WEMBLY USA INC.'S SECOND RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Plaintiff Patricia Emerson, through counsel Zupkus and Angell, P.C., and pursuant to F.R.C.P. 56, states the following in support of her Response To Wembley Inc.'s Second Renewed Motion For Summary Judgment And Wembley USA, Inc.'s (collectively referred to as "Wembley") Second Renewed Motion For Partial Summary Judgment ("Wembley Brief"):

## I. Introduction

### a. Response To Statement Of Undisputed Material Facts

The following set of facts was listed in the Wembley Brief and Plaintiff agrees with each:

events following Plaintiff's testimony illustrates Defendants Wembleys' retaliation as a direct result of Plaintiff's testimony. Therefore, Defendants Wembleys' Motion For Summary Judgment should be denied.

**IX. Plaintiff Is Entitled To An Adverse Inference Against Defendants Wembley In Response To Mr. Bucci's Invocation Of His Fifth Amendment Rights During His Deposition.**

Plaintiff completed the deposition of Mr. Daniel Bucci on November 16, 2005 in Providence, Rhode Island. Dan Bucci was an officer and director of Wembley who regularly worked with the Plaintiff at all times pertinent to this matter. *See* documents relating to Wembleys' officers and subsidiaries, attached hereto as **Exhibit B-6;** correspondence between Dan Bucci and Pat Emerson, attached hereto as **Exhibit B-28.** Mr. Bucci has recently been convicted of conspiracy to commit wire fraud and is preparing to appeal (the "Lincoln Park appeal"). *See* Undisputed Facts above. Accordingly, Mr. Bucci declined to answer the vast majority of the deposition questions posed in the present case. Instead, Mr. Bucci asserted his Fifth Amendment rights under the United States Constitution. *See* Deposition of Dan Bucci, taken November 16, 2005, attached hereto as **Exhibit B-34.** Because of Mr. Bucci's silence, Plaintiff was deprived of vital and important discovery in this case.

Mr. Bucci was a representative of Defendants Wembley because he worked at Wembley at all times pertinent herein. Dan Bucci was an officer and director of Wembley USA Inc. and Wembley Inc. at the time Plaintiff worked for the companies. *See* documents relating to Wembleys' officers and subsidiaries, attached hereto as **Exhibit B-6;** Deposition of Dan Bucci, taken November 16, 2005, p. 10, lines 18-24, p.

11, lines 1-7, attached hereto as **Exhibit B-34.** Mr. Bucci also worked for Lincoln Park at the time Plaintiff worked for Defendants Wembley. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 12, lines 12-18, attached hereto as **Exhibit B-34.** Wembley Inc now owns Lincoln Park. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 33, lines 22-24, p. 34, lines 1-4, attached hereto as **Exhibit B-34.** While working for Wembley USA Inc. and Wembley Inc., Mr. Bucci reported to Nigel Potter. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 11, lines 19-24, p. 23, lines 2-3, attached hereto as **Exhibit B-34.** Mr. Bucci also reported to Mr. Potter while working at Lincoln Park. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 12, lines 19-24, p. 13, lines 1-4, attached hereto as **Exhibit B-34.**

That Mr. Bucci represented Defendants Wembley is evident from Mr. Bucci's job duties and conduct during the course of the Plaintiff's employment. Dan Bucci was familiar with the accounting practices at Lincoln Park, and with how the money room was operated. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 13, lines 5-24, attached hereto as **Exhibit B-34.** Mr. Bucci wrote and cashed checks in the money room in Lincoln Park. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 47, lines 9-20, attached hereto as **Exhibit B-34.** Mr. Bucci also helped prepare the job requirements for the financial director position at Lincoln Park. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 49, lines 5-15, attached hereto as **Exhibit B-34.** Mr. Bucci had a role in reducing Plaintiff's status as a type A check signer after April 27, 2001. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 39, lines 2-11, attached hereto as **Exhibit B-34.** Mr. Bucci exchanged emails and messages on Lincoln Park letterhead discussing the Plaintiff. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 53-

56, attached hereto as **Exhibit B-34.** Further, Mr. Bucci sent a memo to Plaintiff telling her that any requests for corporate information must come through Mr. Bucci in writing. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 48, lines 7-15, attached hereto as **Exhibit B-34.** Mr. Bucci is clearly an agent and employee of Defendants Wembley.

Therefore, the Plaintiff respectfully requests this Court order an adverse inference against Defendants Wembley for each of the unanswered questions in Mr. Bucci's deposition, in order to preserve fairness and justice in this case.

An adverse inference is proper in a civil matter. *See Asplin v. Mueller*, 687 P.2d 1329 (Colo. App. 1984). In *Baxter v. Palmigiano*, the U.S. Supreme Court held that the Fifth Amendment does not preclude a court from drawing negative inferences against a party in a civil action who refuses "to testify in response to probative evidence offered against [him]." *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). Likewise, in *Chaffrin, Inc. v. Wallain*, the Colorado Court of Appeals allowed an adverse inference against a party in a civil case who claimed the Fifth Amendment "in response to discovery requests and to properly posed questions." *See Chaffin, Inc. v. Wallain*, 689 P.2d 684 (Colo. App. 1984).

Courts have found that allowing the fact finder to draw an adverse inference from one party's silence substantially levels the playing field for the opposing party. *See S.E.C. v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998). In determining whether to draw an adverse inference, "[a] trial court must carefully balance the interests of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment." *Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084 (5th Cir. 1979)

(*quoting SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 192 (3d Cir. 1994)). Although the privilege against self-incrimination exemplifies important policy considerations, courts must also recognize the realities of modern litigation. *See Chaffin*, 689 P.2d at 688. "In civil actions, the vast weight of the government's investigative and prosecutorial resources are not present." *Id.* "[T]he ability of a party in a civil action to litigate a claim can be severely hampered if, as here, his requests for discovery and questions to a witness are met with the litany of a Fifth Amendment claim of privilege." *Id.* at 688-689.

In addition, an adverse inference is a remedy within the discretion of this Court. "A trial court retains significant discretion in fashioning the appropriate remedy for a plaintiff's refusal to answer specific questions based on the privilege against self-incrimination." *See Steiner, M.D. v. Minn. Life Ins. Co.*, 85 P.3d 135 (Colo. 2004).

In determining what adverse consequences will flow from a party's invocation of his Fifth Amendment privilege in response to deposition questions, the Colorado Court of Appeals has applied a fairness standard. *See Steiner, supra.* at 141. In *Steiner*, the Court held that "when confronted with the tension between the plaintiff's invocation of the privilege and the defendant's need for discovery, a trial court must determine: (1) whether the defendant has a substantial need for the information withheld; (2) whether the defendant has an alternative means of obtaining the information; and (3) whether any effective, alternative remedy, short of dismissal, is available." *See id.* The court recognized that the appropriate remedy depends upon the facts and circumstances of each case. *See id.*

In the present case, drawing an adverse inference against Mr. Bucci's testimony, and applying it to every unanswered question, would help remedy the unfair prejudice

experienced by the Plaintiff as a result of Mr. Bucci's silence during his deposition. Plaintiff anticipated gathering significant and vital information during Mr. Bucci's deposition, as indicated by the questions Plaintiff asked Mr. Bucci. *See* Deposition of Dan Bucci, taken November 16, 2005, attached hereto as **Exhibit B-34**; affidavit of Pat Emerson, attached hereto as **Exhibit B-8**.

Mr. Bucci would have testified at his deposition regarding the structural organization of Wembley USA Inc. and Wembley Inc. Mr. Bucci was asked whether Wembley USA Inc. and Wembley Inc. had the same registered agents in Colorado and Delaware. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 32, lines 1-8, attached hereto as **Exhibit B-34.** Dan Bucci was also asked whether, at the time of the Plaintiff's employment, all of Wembley Inc.'s officers and directors were the same as Wembley USA Inc.'s officers and directors. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 32, lines 9-16, attached hereto as **Exhibit B-34.**

Mr. Bucci's would have further testified as to the reorganization of Wembley USA Inc., Wembley Inc., and Lincoln Park. Mr. Bucci was asked whether he was aware that after Plaintiff's employment with Defendants Wembley, the Wembley companies were reorganized. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 33, lines 4-11, attached hereto as **Exhibit B-34.** Mr. Bucci was asked to confirm that the assets and responsibilities once held by Wembley USA Inc. are now divided between Wembley Inc. and Wembley USA Inc. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 32, lines 17-24, p. 33, lines 1-3, attached hereto as **Exhibit B-34.** Mr. Bucci was asked whether Wembley Inc now owns Lincoln Park. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 33, lines 22-24, p. 34, lines 1-4, attached hereto as **Exhibit B-34.**

Mr. Bucci's testimony would have confirmed that Wembley Inc. now most closely resembles the entities for which Plaintiff performed work during her employment. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 33, lines 12-21, attached hereto as **Exhibit B-34.**

Mr. Bucci would have testified regarding the dates of Plaintiff's employment and her scope of work while employed at Wembley Inc., Wembley USA Inc., and Lincoln Park. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 15, lines 5-20, attached hereto as **Exhibit B-34.** Mr. Bucci was asked whether he was aware that Plaintiff prepared federal tax returns for Wembley Inc. and signed these returns as acting CFO. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 16, lines 11-21, p. 17, 1-14, attached hereto as **Exhibit B-34.** Mr. Bucci was also asked whether he was aware that Plaintiff had authority to approve all contracts and purchases for Wembley Inc. and Wembley USA Inc. prior to 2002. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 15, lines 15-24, attached hereto as **Exhibit B-34.**

In addition, Mr. Bucci was asked whether Plaintiff performed financial functions on behalf of Lincoln Park to include reviewing and approving all money room controls, policies, and procedures; performing monthly reviews of financial statements; designing and setting up automatic simulcast settlement programs; preparing business plans and budgets; and supervising all onsite accounting functions for Lincoln Park. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 18, lines 1-23, p. 19, lines 1-24, p. 20, lines 1-14, attached hereto as **Exhibit B-34.**

Dan Bucci would have testified regarding whether Plaintiff was considered to be within the cadre of upper management at both Wembley USA Inc. and Wembley Inc. at

the time of her employment. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 22, lines 3-22, attached hereto as **Exhibit B-34.** Mr. Bucci was asked whether Plaintiff attended board meetings for Wembley USA Inc. and Wembley Inc. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 26, lines 16-24, attached hereto as **Exhibit B-34.** Mr. Bucci was further asked whether the Plaintiff assumed responsibility for the full financial affairs of Wembley USA Inc. on April 18, 2001. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 21, lines 7-17, attached hereto as **Exhibit B-34.**

Mr. Bucci's deposition testimony would have included statements supporting the Plaintiff's claim of gender discrimination. Mr. Bucci was asked whether he was familiar with Plaintiff's benefit and compensation packages. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 23, lines 11-19, attached hereto as **Exhibit B-34.** Mr. Bucci was asked whether, as of April 18, 2001, Plaintiff's benefit and compensation packages with Wembley USA Inc. and Wembley Inc. were not commensurate with comparable responsibility levels of other upper management members of Wembley USA Inc. or Wembley Inc. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 23, lines 20-24, p. 24, lines 1-7, attached hereto as **Exhibit B-34.** Mr. Bucci was also asked whether Plaintiff was the only female officer of Wembley USA Inc. or Wembley Inc. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 15, lines 21-24, p. 16, 1-10, attached hereto as **Exhibit B-34.** Mr. Bucci was asked whether, in October 2001, Defendants Wembley hired Jeffrey Goergen as CFO, even though Mr. Goergen's background, qualifications, and experience were less than that of Plaintiff. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 24, lines 8-24, attached hereto as **Exhibit B-34.**

Mr. Bucci would have testified as to the consequences of Plaintiff's filing her EEOC complaint in October 2001. Mr. Bucci was asked whether he reduced Plaintiff's status as a type A check signer after April 27, 2001. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 25, lines 20-24, p. 26, lines 1-5, p. 39, lines 2-11, attached hereto as **Exhibit B-34.** Mr. Bucci was asked whether he was aware that after October 2001, Wembley USA Inc. and Wembley Inc. began for the first time to criticize Emerson's job performance, and excluded Plaintiff from all further board meetings. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 26, lines 6-15, p. 27, lines 2-12, attached hereto as **Exhibit B-34.** Mr. Bucci was further asked whether Wembley USA inc. and Wembley Inc. removed Plaintiff's authority to approve all contracts and to approve purchases. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 27, lines 13-23, attached hereto as **Exhibit B-34.**

Mr. Bucci would have also testified as to the Plaintiff's role in the grand jury proceedings against Mr. Bucci. Mr. Bucci was asked whether the Plaintiff was called to testify in grand jury investigations that related to the criminal charges ultimately brought against Mr. Bucci and Nigel Potter. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 29, lines 18-24, p. 30, lines 1-3, attached hereto as **Exhibit B-34.** Mr. Bucci was asked to admit that Plaintiff refused to make payments to McKinnon and Harwood, and that these payments were what ultimately what led to Mr. Bucci's indictment and conviction. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 30, lines 4-15, attached hereto as **Exhibit B-34.**

Mr. Bucci would have further testified as to the consequences of the Plaintiff's grand jury testimony. Mr. Bucci was asked whether he requested that Defendants

Wembley terminate Plaintiff when he realized that Plaintiff knew about the McKinnon and Harwood payments. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 31, lines 3-13, attached hereto as **Exhibit B-34.** Mr. Bucci was also asked whether he discussed with Robert Ty Howard how to make Plaintiff's work environment so hostile that she would have no other choice but to leave employment with Wembley USA Inc. and Wembley Inc. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 31, lines 14-24, attached hereto as **Exhibit B-34.** In addition, Mr. Bucci was asked to admit he sent emails to Mr. Goergen calling the Plaintiff "nosey" [sic] and a "professional rat." *See* Deposition of Dan Bucci, taken November 16, 2005, p. 53, lines 16-23, p. 54, lines 1-13, p. 55, lines 10-24, p. 56, lines 1-11, attached hereto as **Exhibit B-34.**

Mr. Bucci was asked to admit that he sent a memo to the Plaintiff telling her that any requests for corporate information must come through him in writing. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 48, lines 7-15, attached hereto as **Exhibit B-34.** Mr. Bucci was also asked whether he prepared the job requirements for the financial director position at Lincoln Park to which Plaintiff applied, and whether the Plaintiff possessed all of the requirements for this job. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 49, lines 16-24, attached hereto as **Exhibit B-34.**

Mr. Bucci was asked whether he was aware that, after Plaintiff testified in the grand jury proceeding, she received her first written negative evaluation from Defendants Wembley. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 29, lines 8-17, attached hereto as **Exhibit B-34.** Mr. Bucci would have testified that that only after Plaintiff testified at the grand jury proceeding was she accused of fraud or threatened

with termination. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 29, lines 8-24, attached hereto as **Exhibit B-34.**

In addition, Mr. Bucci would have testified regarding his awareness of the effects of this discrimination and retaliation upon the Plaintiff. Mr. Bucci was asked whether he was aware that the Plaintiff experienced physical illness and emotional distress based upon the way she was treated in her employment. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 37, lines 6-14, attached hereto as **Exhibit B-34.** Mr. Bucci was asked whether the Plaintiff's health worsened to such a degree that she had to take a medical leave of absence from the company. *See* Deposition of Dan Bucci, taken November 16, 2005, p. 37, lines 15-24, attached hereto as **Exhibit B-34.**

Because Mr. Bucci pled the Fifth Amendment during his deposition, Plaintiff has been foreclosed from using the vital testimony indicated above to support her claim. Mr. Bucci's claim of privilege has thus created an uneven playing field that severely prejudices the Plaintiff's ability to plead her case. The purpose of the discovery process is to ensure fairness for all parties involved. The Colorado Rules of Civil Procedure governing discovery were written in order to "eliminate secrets and surprises at trial, simplify issues, and lead to fair and just settlements without having to go to trial." *Crist v. Goody*, 507 P.2d 478, 499 (Colo. App. 1972); CRCP 16, 26; FRC 16, 26.

Once an adverse inference is drawn, the court is free to use that evidence to rule on a summary judgment or subsequent motion. *See Sec. & Exchange Comm'n v. Martino*, 255 F.Supp.2d 268, 288 (S.D.N.Y. 2003) (An adverse inference taken from the defendant's deposition led to the court's conclusion that the plaintiff was entitled to summary judgment).

Accordingly, the Plaintiff respectfully requests this Court draw an adverse inference against the Defendant Wembly with respect to each unanswered question in Mr. Bucci's deposition, for use as evidence when deciding Wembley Inc.'s Second Renewed Motion For Summary Judgment and Wembley USA Inc.'s Second Renewed Motion for Partial Summary Judgment, as well as on any subsequent motions. Plaintiff requests that this Court deem that Mr. Bucci admitted each unanswered question in his testimony. Mr. Bucci was an employee and agent of Defendants Wembley at all times pertinent herein. An adverse inference against the Defendants Wembley for each unanswered question is within this Court's discretion, and is an appropriate remedy that would preserve fairness in this case. The Plaintiff's request is supported by the burden of proof on a motion for summary judgment. In deciding upon a motion for summary judgment, the court should "accept as true the evidence presented by the non-movant and draw all justifiable inferences in his favor." *Anderson*, 477 U.S. at 255.

The evidence indicates that there is a genuine issue of material fact with respect to multiple issues in this present case. Therefore, Wembley Inc.'s Second Renewed Motion For Summary Judgment and Wembley USA Inc.'s Second Renewed Motion for Partial Summary Judgment should be DENIED.

**WHEREFORE**, and based on the foregoing, Plaintiff respectfully requests this Court to deny Wembley Inc.'s Second Renewed Motion For Summary Judgment and Wembley USA Inc.'s Second Renewed Motion for Partial Summary Judgment and to grant an adverse inference against Defendants Wembley for each question Mr. Bucci declined to answer during his deposition.